1  **PEASE LAW, APC**
2  Bryan W. Pease (SBN 239139)
   Email: bryan@peaselaw.org
3  Parisa Ijadi-Maghsoodi (SBN 273847)
4  Email: parisa@peaselaw.org
   3960 W. Point Loma Blvd., Ste. H-2562
5  San Diego, CA 92110
6  Ph. (619) 723-0369

7  **LAW OFFICES OF JOHN T. MAHER**
8  John T. Maher (NYS Bar No. 2357408)
   Email: johntmaher@yahoo.com
9  105 E 122nd St.
10 New York, NY 10035
11 Ph. (646) 675-8909
   *Pro hac vice* application pending
12

13 Attorneys for Plaintiffs

14
15                    **UNITED STATES DISTRICT COURT**
16                   **SOUTHERN DISTRICT OF CALIFORNIA**
17

| | |
|---|---|
| HEATHER TAFT, KIRSTEN GONZALEZ, CHEYENNE HENRY, YURIDIA CERON, and VANESSA ZAPATA, | Case No.  **'22CV0697 WQHMDD** |
| Plaintiffs, | **CLASS ACTION** |
| v. | **COMPLAINT FOR DAMAGES AND PROFIT DISGORGEMENT** |
| DAVID SALINAS, and individual; VERONICA SALINAS, an individual; RED ROCK ENTERPRISES OF UTAH, INC., a Utah corporation; PET CONNECT RESCUE, INC., a Missouri corporation; RAY ROTHMAN, an individual; ALYSIA ROTHMAN, an individual; | **DEMAND FOR JURY TRIAL** |

1

**CLASS ACTION COMPLAINT**

JEANNE'S GEMS, INC., an Iowa corporation; DAVID STEFFENSMEIER, an individual; SELECT PUPPIES, INC., an Iowa corporation; BRIAN MOHRFELD, an individual; RAK TRANSPORT, LLC, a Missouri limited liability company; TIFFANIES, LLC, a Missouri limited liability company; TIFFANIE KURZ, an individual; TBHF, LLC, an Iowa limited liability company; RICHARD KIRK, an individual; RUSSELL KIRK, an individual; and DOES 1-25,

Defendants.

# INTRODUCTION

1. Defendants for many years supplied puppies from puppy mills into the State of California to be sold in retail pet stores.

2. Starting on January 1, 2019, California Health & Safety Code § 122354.5 (the "Puppy Mill Ban") banned the commercial sale of non-rescue dogs, cats, and rabbits in retail pet stores.[1] The law defined "rescue" group as an entity organized as a 501(c)(3) nonprofit that was in a "cooperative agreement" with at least one public or private shelter, and that did not obtain animals from brokers or breeders for compensation.

3. The legislative history describes the Puppy Mill Ban's purpose as follows:

> California taxpayers spend a quarter of a billion dollars annually to house and kill animals in local shelters while puppy mills throughout the country continue to mass breed animals for profit. [This bill] attempts to curtail these operations by supporting access to pet rescue and adoption in

---

[1] The law has since been amended to ban *all* retail sale of these animals in pet stores, while allowing stores to provide space for rescue groups to hold adoption events. (Cal. Health & Safety Code § 122354.5, effective January 1, 2021.)

2

CLASS ACTION COMPLAINT

California retail pet stores. By offering puppies, kittens and rabbits for adoption from nearby shelters, pet stores can save the lives of animals in search for a home, save the breeding animals trapped in puppy mills, and relieve pressure on county budgets and local tax payers.

(https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201720180AB485#, last visited May 13, 2022.)

4. The legislative history defines "puppy mills" as follows:

*Puppy Mills*. "Puppy Mills" or "Kitty Factories" are common terms for large commercial breeding facilities that mass produce animals for sale at retail markets. It is estimated that there are 10,000 puppy mills in the United States. These are separate from other types of breeders who produce a smaller quantity of animals and typically in California do not sell directly to retail pet outlets; however, there are no restrictions on pet stores as to where they can acquire animals for retail sale. Mass produced, commercial animal breeders are typically scrutinized for their treatment of the animals including producing sick animals, inhumane treatment, and providing abhorrent living conditions. This bill aims to limit the sales of animals in California that are from "puppy mills," "kitten factories" or other commercial breeding facilities and to help ensure that available shelter animals are a source of animal sales.

(*Ibid.*)

5. The legislative history notes the following regarding federal law:

Federal Law. The federal Animal Welfare Act was passed by Congress in 1966 and establishes minimum standards for the care and treatment of animals bred for commercial sale, exhibited to the public, used in biomedical research or commercial transport. The United States Department of Agriculture (USDA) is responsible for overseeing the commercial dog breeding industry. Breeders who sell to a pet store or consumers over the Internet are required to hold a license. However, as noted by various animal welfare organizations, federal laws provide a minimal level of specificity for animal care and violations are often found in many commercial breeding organizations, while others operate underground making enforcement of the laws difficult and challenging. According to the USDA, there are approximately 120 field-based employees who inspect licensed commercial breeding facilities in all 50 states. If a violation is found, then a facility is

given a notice to correct, and in those serious cases of neglect, legal action may occur. According to the USDA, the system used to inspect a dog or cat breeding facility is based on a risk-based system. The frequency of an inspection is dependent upon a facility's compliance record, while all licensed facilities are inspected; those facilities with more compliance issues are inspected more frequently. In addition, the USDA reports that its inspectors may visit a facility when the USDA receives a complaint.

(*Ibid.*)

6. Rather than comply with the law, some puppy stores in California continued their exact same business model, replacing breeder information for the puppies with "rescue."

7. All Defendants, acting in concert and as accomplices to each other, intentionally supplied these stores with puppies fraudulently mislabeled as "rescues" to deceive consumers such as Plaintiffs and illicitly profited from these sales.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

9. Alternatively, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendants; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate, exclusive of interests and costs.

10. In addition, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Defendants' violations of the federal civil RICO statute arise under federal law, and the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

11. This Court has personal jurisdiction over Defendants because all Defendants have sufficient contacts with California. Plaintiffs' claims and causes of

action alleged herein arise out of Defendants' respective contacts with this State. Moreover, all Defendants have purposely availed themselves of the privileges and benefits of conducting business activities in California through their marketing, advertising, and sale of puppies in this state.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because at all relevant times, Defendants engaged in continuous and systematic business activities within the State of California, a substantial portion of the underlying transactions and events complained of occurred and affected persons and entities in this district, and Defendants received substantial compensation from transactions and business activities in this district.

**PARTIES**

13. Plaintiff HEATHER TAFT is an individual residing in Clark County, Nevada, who purchased a puppy from Broadway Puppies in San Diego County, California on May 15, 2019. The puppy was labeled as being from Defendant PET CONNECT RESCUE, INC. which is a front for SELECT PUPPIES, INC., which obtained the puppy from JEANNE'S GEMS, INC.

14. Plaintiff KIRSTEN GONZALEZ is an individual residing in Riverside County, California, who purchased a puppy from Pups & Pets in San Diego County, California on February 23, 2020. The puppy was labeled as being from Defendant PET CONNECT RESCUE, INC. but was actually purchased from a breeder by SELECT PUPPIES, INC. and transferred through TIFFANIES, LLC.

15. Plaintiff CHEYENNE HENRY is an individual residing in Virginia who purchased a puppy from National City Puppy in San Diego County on August 25, 2019. The puppy was labeled as being from Defendant PET CONNECT RESCUE, INC. but was actually purchased from a breeder by SELECT PUPPIES, INC. and transferred through CHOICE PUPPIES, INC.

16. Plaintiff YURIDIA CERON is an individual residing in San Diego County who purchased a puppy from Broadway Puppies in San Diego County on February 7,

2020. The puppy was labeled as being from Defendant PET CONNECT RESCUE, INC. but was actually purchased from a breeder by SELECT PUPPIES, INC. and transferred through TIFFANIES, LLC.

17. Plaintiff VANESSA ZAPATA is an individual residing in Riverside County who purchased a puppy from the Fancy Puppy in Riverside County on December 3, 2019. The puppy was labeled as being from Defendant PET CONNECT RESCUE, INC. but was actually purchased from a breeder by SELECT PUPPIES, INC. and transferred through TIFFANIES, LLC.

18. Defendant DAVID SALINAS is an individual residing in Utah.

19. Defendant VERONICA SALINAS is an individual residing in Utah.

20. Defendant RED ROCK ENTERPRISES OF UTAH, INC. is a Utah corporation.

21. Defendant PET CONNECT RESCUE, INC. is a Missouri corporation.

22. Defendant RAY ROTHMAN is an individual residing in Missouri.

23. Defendant ALYSIA ROTHMAN is an individual residing in Missouri.

24. Defendant JEANNE'S GEMS, INC. is an Iowa corporation.

25. Defendant DAVID STEFFENSMEIER is an individual residing in Illinois.

26. Defendant SELECT PUPPIES, INC. is an Iowa corporation.

27. Defendant BRIAN MOHRFELD is an individual residing in Iowa.

28. Defendant RAK TRANSPORT, LLC is a Missouri limited liability company.

29. Defendant TIFFANIES, LLC is a Missouri limited liability company.

30. Defendant TIFFANIE KURZ is an individual residing in Missouri.

31. Defendant TBHF, LLC is an Iowa limited liability company.

32. Defendant RICHARD KIRK is an individual residing in Missouri.

33. Defendant RUSSELL KIRK is an individual residing in Missouri.

## CLASS ALLEGATIONS

34. The Class includes all persons who purchased a puppy during at least the last four years from the date of the filing of this Complaint until June 18, 2020 at Broadway Puppies in Escondido, California; National City Puppy in National City, California; Pups & Pets in Santee, California; Hello Puppies in Temecula, California; or Fancy Puppy in Corona, California that was labeled a "rescue," and was sourced through JEANNE'S GEMS, INC., SELECT PUPPIES, INC., CHOICE PUPPIES, INC., and/or TIFFANIES, LLC, and was not supplied by non-party J.A.K.'s Puppies, Inc.

35. Excluded from the Class are: (i) Defendants and their officers, directors, owners, and employees; (ii) any person who files a valid and timely request for exclusion; and (iii) judicial officers and their immediate family members and associated court staff assigned to the case.

36. Plaintiffs reserve the right to amend or otherwise alter the class definitions presented to the Court at the appropriate time, or to propose or eliminate subclasses, in response to facts learned through discovery, legal arguments advanced by Defendants, or otherwise.

37. This action is properly maintainable as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) for the reasons set forth below.

38. Numerosity—Federal Rule of Civil Procedure 23(a)(1). Prospective class members, however defined, are readily ascertainable by way of Defendants' records and are so numerous that joinder of all members is impracticable. The class consists of approximately 6,000 members.

39. Commonality—Federal Rule of Civil Procedure 23(a)(2). There are numerous and substantial questions of law or fact common to all members of the class that predominate over any individual issues. Included within the common questions of law or fact are:

    a. Whether Defendants mislabeled puppies as "rescues" to evade California law and deceive consumers;

     b.  Whether Defendants engaged in unlawful, unfair, or deceptive practices by advertising and selling puppies as "rescues";

     c.  Whether Defendants violated the applicable consumer protection state statutes;

     d.  Whether Defendants violated Cal. Health & Safety Code § 122354.5;

     e.  Whether Defendants have been unjustly enriched;

     f.  Whether Plaintiffs and the class members have sustained damage as a result of Defendants' unlawful conduct; and

     g.  The proper measure of damages sustained by Plaintiffs and Class members.

40.    Typicality—Federal Rule of Civil Procedure 23(a)(3). Plaintiffs' claims are typical of the claims of the members of the class they seek to represent. Plaintiffs, like the class members, purchased Defendants' puppies after falling victim to Defendants' uniformly deceptive advertising, marketing scheme.

41.    Adequacy—Federal Rule of Civil Procedure 23(a)(4). Plaintiffs are adequate representatives of the class they seek to represent because their interests do not materially or irreconcilably conflict with the interests of other members of the class. On the contrary, Plaintiffs will fairly, adequately, and vigorously protect the interests of class members and have retained counsel experienced and competent in the prosecution of complex cases, including complex class action litigation.

42.    Predominance and Superiority—Federal Rule of Civil Procedure 23(b)(3). As described above with respect to commonality, there are numerous and substantial questions of law or fact common to class members that predominate over any questions that affect only individual members. In addition, class treatment is superior to other available group-wide methods for the fair and efficient adjudication of this action because it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense, and burden on the courts that individual actions would entail.

43. The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, are superior to any other method available for the fair and efficient group-wide adjudication of these claims. Absent a class action, it would be highly unlikely that Plaintiffs or any other putative class members would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery.

## ALLEGATIONS OF FACT

44. Defendants TIFFANIE KURZ, RICHARD KIRK, and RUSSELL KIRK run TBHF, LLC, which operates as a hub for tracking and altering ownership information of puppies so they can be purchased from breeders and shipped to pet stores while obscuring the true source of the puppies, i.e. "puppy laundering."

45. Defendant TIFFANIE KURZ also owns and operates TIFFANIES, LLC, which is a broker of puppies and acted as a conduit or go-between in the present case.

46. Defendant RAY ROTHMAN and ALYSIA ROTHMAN created the sham PET CONNECT RESCUE, INC. to fraudulently act as the source of the puppies sold as "rescues" in California stores.

47. Defendant RAY ROTHMAN is and at all relevant times was the sole manager of SELECT PUPPIES, INC.

48. On a weekly basis, RAY ROTHMAN would email breed availability notices to pet stores in California from SELECT PUPPIES, INC. The stores would then indicate which puppies they wished to purchase for that week's shipment. Defendants would then obscure the source of the puppies from consumers by listing a series of sham transactions between Defendants' various shell companies and pass-through entities. Defendants purchased all puppies from breeders.

49. Defendants DAVID SALINAS and VERONICA SALINAS directly conspired with ROTHMAN to set up sham "cooperative agreements" with shelters to claim that Defendant PET CONNECT RESCUE, INC. was a valid "rescue group" from which puppies could be sold in pet stores.

50. Through a series of pass-through entities and shell corporations owned by their wholly owned corporation RED ROCK ENTERPRISES OF UTAH, INC., Defendants DAVID SALINAS and VERONICA SALINAS then reaped the profits of the illegal and fraudulent puppy sales at National City Puppy, Pups & Pets, Broadway Puppies, Fancy Puppy, and Hello Puppies, all located in San Diego and Riverside Counties.

51. Defendants JEANNES GEMS, INC. and DAVID STEFFENSMEIER were brokers that knowingly purchased puppies from breeders and sold them to PET CONNECT RESCUE, with the funds being paid through other shell corporations.

52. RAY ROTHMAN funneled money being paid for "Pet Connect Rescue" puppies through his wholly owned shell corporation, RAK TRANSPORT, LLC, to disguise those transactions and claim that Defendant PET CONNECT RESCUE was not receiving compensation for the puppies. Neither RAK TRANSPORT, LLC nor PET CONNECT RESCUE, INC. have ever had any physical location.

53. Defendant BRIAN MOHRFELD is the sole owner of both SELECT PUPPIES, INC. and CHOICE PUPPIES, INC. and specifically empowered and conspired with ROTHMAN to use these entities to launder puppies from breeders to pet stores, fraudulently labeled "rescues."

54. CHOICE PUPPIES, INC. is yet another pass-through entity that Defendants claimed was "closed" during the relevant time period but were using as a shell to transfer puppy ownership through to obscure the true source of the puppies.

55. All puppies sold by Defendants to Plaintiffs came from puppy mills and had severe health problems requiring expensive and ongoing veterinary care, or in some cases euthanasia.

56. All Defendants acted as accomplices to each other, with full knowledge and ratification of each others' fraudulent acts, and conspired to defraud consumers such as Plaintiffs and putative class members, into purchasing puppies labeled "rescues" that Defendants actually purchased from breeders to resell at a profit.

# FIRST CAUSE OF ACTION

## Consumer Legal Remedies Act – Civil Code § 1750

57. Plaintiffs reallege the paragraphs above as if fully set forth herein.

58. The Consumer Legal Remedies Act ("CLRA"), Civil Code § 1750, *et seq.*, prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer" which includes, but are not limited to:

   a. "Misrepresenting the source, sponsorship, approval, or certification of services"

   b. "Representing that services have approval, characteristics, benefits that they do not have or that a person has an approval, status, that he or she does not have."

   c. "Representing that services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

   d. "Advertising services with intent not to sell them as advertised."

   e. "Representing that a transaction confers or involves rights, remedies, that it does not have or involve";

   f. "Representing that the consumer will receive economic benefit, contingent on an event to occur subsequent to the consummation of the transaction"; and

   g. "inserting an unconscionable provision in the contract."

59. As set forth herein, Defendants misrepresented to consumers in California that they were selling "rescue puppies" when in fact they were selling puppies from puppy mills.

60. Defendants' advertisements and representations are false and misleading in a material respect and were directed at and misleading to reasonable consumers such as Plaintiffs and class members.

61. At all times during which Defendants made the above-referenced representations to Plaintiffs, and to the public, Defendants knew that they were false and

misleading.

62. Plaintiffs and class members reasonably relied upon and were deceived by Defendants' false and misleading advertising and paid money to Defendants, each obtaining a puppy Defendants' falsely claimed was a "rescue puppy."

## SECOND CAUSE OF ACTION

### Unfair Business Practices – BPC § 17200, *et seq.*

63. Plaintiffs reallege and incorporate by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

64. At all relevant times mentioned in this complaint, the Puppy Mill Ban provided:

> A pet store operator shall not sell a live dog, cat, or rabbit in a pet store unless the dog, cat, or rabbit was obtained from a public animal control agency or shelter, society for the prevention of cruelty to animals shelter, humane society shelter, or rescue group that is in a cooperative agreement with at least one private or public shelter pursuant to Section 31108, 31752, or 31753 of the Food and Agricultural Code.

(Health & Safety Code § 122354.5(a), effective January 1, 2019.)

65. The Puppy Mill Ban further provided:

> For purposes of this section, a "rescue group" is an organization that is tax exempt under Section 501(c)(3) of the Internal Revenue Code, and that ***does not obtain animals from breeders or brokers for compensation.***

(Health & Safety Code § 122354.5(a), effective January 1, 2019, emphasis added.)

66. Defendants unlawfully sold puppies in a pet store obtained from breeders or brokers for compensation in violation of California law, including the puppies Defendants sold to Plaintiffs and class members.

67. All Defendants were knowingly and willfully acting as accomplices to all other Defendants to evade the Puppy Mill Ban and defraud consumers into believing they were "adopting" a "rescue" animal, when in fact their purchases are supporting the puppy mill industry of which Defendants are a part.

68. All of the Defendants, both independently and collectively, violated Health and Safety Code § 122354.5 by knowingly participating in and profiting from Defendants' unlawful scheme to sell puppy mill puppies in a pet store and falsely advertise to the public that the puppies are "rescues" from a shelter or other legitimate rescue operation.

69. Defendants, and each of them, engaged in acts or practices that constitute unfair competition, as that term is defined in section 17200 *et seq.* of the California Business & Professions Code.

70. Defendants, and each of them, violated Business & Professions Code §§ 17200 *et seq.* through their unlawful business acts and practices, which violated Health and Safety Code § 122354.5 and Business & Professions Code §§ 17200 *et seq.*

## THIRD CAUSE OF ACTION

### Fraudulent Deceit – Civil Code § 1710

71. Plaintiffs reallege the paragraphs above as if fully set forth herein.

72. Defendants made false representations and concealed material facts about the puppies they are selling and engaged in deceptive practices before, during, and after the sale of puppies to Plaintiffs.

73. Defendants made said representations and concealed material information with knowledge of their falsity or without sufficient knowledge on the subject to warrant a representation, and with the intent to induce Plaintiffs to act on it.

74. When Defendants made these representations, Defendants knew them to be false, and made these representations with the intent to defraud and deceive Plaintiffs and with intent to induce Plaintiffs to purchase a puppy.

75. Plaintiffs believed the representations and relied on the truth of them in purchasing a puppy. Plaintiffs would not have purchased the puppy had it not been for the fraudulent deceit.

76. The reliance by Plaintiffs was justified because Defendants were in a position of advantage with respect to knowledge of facts concerning where the puppies

came from, Defendants falsely and fraudulently represented to Plaintiffs that they were selling "rescue puppies," and Defendants represented to Plaintiffs that the puppy Plaintiffs purchased were "rescue puppies."

77. As a proximate result of Defendants' fraudulent deceit and the facts herein alleged, Plaintiffs each purchased a puppy which they believed was a "rescue puppy", but instead was a puppy from a puppy mill, and incurred thousands of dollars in veterinary bills due to illnesses caused by the poor conditions in which the puppies were bred, transported, and stored prior to sale.

78. Defendants acted with malice and fraud, intentionally deceiving Plaintiffs as they did all of their customers and class members, into believing they were purchasing a "rescue" animal, solely so that Defendants could continue to profit from selling puppy mill puppies in violation of the Puppy Mill Ban. Such despicable conduct entitles Plaintiffs to punitive damages against Defendants.

## FOURTH CAUSE OF ACTION
### Negligence – Civil Code § 1714

79. Plaintiffs reallege the paragraphs above as if fully set forth herein.

80. Defendants had a duty not to engage in an illegal puppy laundering scheme to sell puppy mill puppies to unsuspecting consumers in California pet stores.

81. Defendants also had a duty not to sell ill puppies from puppy mills to Plaintiffs and class members, requiring Plaintiffs and class members to pay thousands of dollars per puppy in veterinary care.

82. Defendants breached each of their respective duties.

83. As a result of Defendants' breach, Plaintiffs and class members suffered damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### Racketeer Influenced and Corrupt Organizations Act ("RICO")
### 18 U.S.C § 1961 *et seq.*

84. Plaintiffs reallege the paragraphs above as if fully set forth herein.

**CLASS ACTION COMPLAINT**

85. Each Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961(3).

86. Each Defendant violated 18 U.S.C. § 1962(c) and (d) by the acts described in this Complaint. Specifically, each Defendant's activities affected interstate commerce, each Defendant conducted or participated, directly or indirectly, in the enterprise's affairs through a pattern of racketeering activity, and each Defendant conspired to participate, directly or indirectly, in the enterprise's affairs through a pattern of racketeering activity.

87. Defendants, and each of them, formed an association-in-fact for the common and continuing purpose described in this Complaint. Together, they constitute an enterprise within the meaning of 18 U.S.C. § 1961(4) engaged in the conduct of their affairs through a continuing pattern of racketeering activity. Defendants, as the members of the enterprise, functioned as a continuing unit with ascertainable structure separate and distinct from that of the conduct of the pattern of racketeering activity.

88. Defendants, and each of them, knowingly, willfully, and unlawfully conducted or participated, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity within the meaning on 18 U.S.C § 1691, *et seq*. The racketeering activity was made possible by Defendants' regular and repeated use of the facilities and services of the enterprise. Defendants have the specific intent to engage in the substantive RICO violations alleged herein.

89. Defendants participated in the operation and management of the association-in-fact enterprise alleged above by overseeing and coordinating the commission of multiple acts of racketeering as described below.

90. Defendants, each of whom are persons associated with, or employed by, the enterprise(s), did knowingly, willfully, and unlawfully conduct or participate, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1), 1961(5), 1962(c), and 1962(d). The racketeering activity was made possible by Defendants' regular and repeated use of the facilities and

services of the enterprise. Defendants had the specific intent to engage in the substantive RICO violations alleged herein.

91. Predicate acts of racketeering activity are acts which are indictable under the provisions of the U.S. Code listed in 18 U.S.C § 1961(1)(B) and which are more specifically discussed herein. Each Defendant committed at least two such acts or else aided and abetted such acts.

92. These acts of racketeering were not isolated, but rather the acts of Defendants were related in that they had the same or similar purpose and result, participants, victims, and method of commission. Further, the acts of racketeering by Defendants have been continuous. There was repeated conduct during a period continuing to the present, and there is a continued threat of repetition of such conduct.

93. The association-in-fact enterprise and the alternative enterprises, as alleged herein, were not limited to the predicate acts and extended beyond their racketeering activity. Rather, they existed separate and apart from the pattern of racketeering activity for legitimate business purposes.

94. Defendants committed acts constituting indictable offenses under 18 U.S.C. §§ 1341 and 1343 in that they devised or intended to devise a scheme or artifice to defraud Plaintiffs and putative class members of money by means of false or fraudulent pretenses, representations or promises. For the purpose of executing their scheme or artifice, Defendants caused delivery of various documents and things by the U.S. mails, via the internet, via facsimile and/or by private or commercial interstate carriers or received such therefrom. Defendants also transmitted or caused to be transmitted by means of wire communications in interstate commerce various writings, signs and signals.

95. The acts of Defendants set forth above were done with knowledge that the use of the mails or wires would follow in the ordinary course of business, or that such use could have been foreseen, even if not actually intended. These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme or

artifice.

96. Defendants carried out their scheme in different states and could not have done so unless they used the U.S. mails or private or commercial interstate carriers or interstate wires.

97. In furtherance of their scheme alleged herein, Defendants communicated among themselves and with Plaintiffs and putative class members in furtherance of the scheme to defraud Plaintiffs and putative class members. These communications were typically transmitted by wire (i.e., electronically) and/or through the United States mails or private or commercial carriers.

98. In addition, in furtherance of their scheme, Defendants used the wires and/or U.S. mail or private or commercial carriers to induce Plaintiffs to purchase puppies fraudulently labeled as "rescues" to evade California law. Defendants also communicated by the wires and/or U.S. mail or private or commercial carriers to facilitate the sales and subsequent purchases, including accepting payments over the Internet or by mail, including through use of third party lending companies.

99. Plaintiffs and putative class members reasonably and justifiably relied on Defendants' false misrepresentations and deceptive communications as alleged in this Complaint.

100. Plaintiffs and putative class members have been damaged as a direct and proximate result of Defendants' participation in the enterprise.

101. Defendants' violations of state and federal laws as set forth in this Complaint, each of which directly and proximately injured Plaintiffs and putative class members, constituted a continuous course of conduct spanning a period of time encompassing at least 2018 through the present. Defendants' conduct was intended to obtain money through false representations, fraud, deceit, and other improper and other unlawful means.

102. Plaintiffs and putative class members seek an award of actual damages. Plaintiffs further seek an award three times the damages they sustained, and the recovery

of reasonable attorneys' fees and costs of investigation and litigation, as well as any other relief authorized by statute.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs prays for judgment against Defendants as follows:

1. For damages to be proven at trial;
2. For restitution and disgorgement as allowed by law;
3. For punitive and treble damages as allowed by law;
4. For reasonable attorneys' fees as provided by, *inter alia,* California Code of Civil Procedure § 1021.5;
5. For costs of suit incurred herein;
6. For pre- and post-judgment interest;
7. For such other and further relief as the Court deems just and proper.

Dated: May 16, 2022                    By: _____
                                            Bryan W. Pease, Esq.
                                            Attorney for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all causes of action for which a jury trial is permitted.

Dated: May 16, 2022                    By: _____
                                            Bryan W. Pease, Esq.
                                            Attorney for Plaintiff