1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17
18
19
20

| | |
|---|---|
| HEATHER TAFT et al., | Case No.:  22-cv-697-RSH-DEB |
| Plaintiffs, | |
| v. | **ORDER (1) GRANTING MOTIONS TO DISMISS AND (2) DENYING MOTION TO STRIKE CLASS ALLEGATIONS AS MOOT** |
| DAVID SALINAS et al., | |
| Defendants. | |
| | [ECF Nos. 32, 33, 34] |

21
22
23
24
25
26
27
28

Pending are two motions to dismiss Plaintiffs' First Amended Complaint and a motion to strike class action allegations. ECF Nos. 32–34. For the reasons discussed below, the Court grants the motions to dismiss only to the extent they are based on Plaintiffs' failure to allege facts with sufficient particularity, as required under Federal Rule of Civil Procedure 9(b), and dismisses the complaint with leave to amend. ECF No. 32, 34. Further, the Court denies the motion to strike class allegations as moot. ECF No. 33.

//

# I.   BACKGROUND

## A.   Procedural History

On May 16, 2022, Plaintiffs Heather Taft, Kirsten Gonzalez, Cheyenne Henry, Yuridia Ceron, and Vanessa Zapata brought the instant putative class action against 16 individuals and entities involved in the business of selling puppies to pet stores. ECF No. 1. Plaintiffs asserted five claims: (1) a violation of the Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750; (2) unfair business practices based on a violation of California Health & Safety Code § 122354.5 (hereinafter, the "Pet Store Law"), which banned the sale of non-rescue dogs at pet stores[1]; (3) fraudulent deceit; (4) negligence; and (5) a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq. Id.* ¶¶ 57–102.

On October 28, 2022, Defendants Brian Mohrfeld, Select Puppies, Inc. ("Select"), David Steffensmeier, and Jeanne's Gems, Inc. ("Jeanne's Gems") (collectively, the "Mohrfeld Defendants") filed a motion to dismiss the Complaint and a motion to strike class action allegations pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f), respectively. ECF Nos. 17–18. Defendants David Salinas, Veronica Salinas, Red Rock Enterprises of Utah, Inc. ("Red Rock"), Ray Rothman, Alysia Rothman, Pet Connect

---

[1]    At the time the conduct complained of began, the Pet Store Law provided in relevant part:

A pet store operator shall not sell a live dog, cat, or rabbit in a pet store unless the animal was obtained from a public animal control agency or shelter, society for the prevention of cruelty to animals shelter, humane society shelter, or rescue group that is in a cooperative agreement with at least one private or public shelter pursuant to Section 31108, 31752, or 31753 of the Food and Agricultural Code.

Cal. Health & Safety Code § 122354.5(a) (2019). That section has since been amended as follows: "A pet store shall not adopt out, sell, or offer for sale a dog, cat, or rabbit. This section does not prevent a pet store from providing space to display animals for adoption . . . ." Cal. Health & Safety Code § 122354.5(a) (2021).

Rescue, Inc. ("Pet Connect"), and RAK Transport, LLC ("RAK Transport") (collectively, the "Salinas Defendants") joined in those motions and later separately filed a motion to dismiss under Rule 12(b)(6). ECF Nos. 20–21 (Notices of Joinder), ECF No. 23 (Motion to Dismiss). Defendants TBHF, Inc., Richard Kirk, and Russell Kirk (collectively, the "TBHF Defendants") joined in the three motions filed by the Mohrfeld and Salinas Defendants. ECF Nos. 24–26.

On November 14, 2022, Plaintiffs filed their First Amended Complaint ("FAC"), asserting the same five claims against the same Defendants as in the original Complaint. ECF No. 27. Notably, the FAC added Kaililiah Johnson as a named plaintiff and amended the proposed class as

> all persons who purchased a puppy labeled as a "rescue" during at least the last four years from the date of the filing this action until June 18, 2020 in a pet store in California, and that was sourced through any of Defendants, and was not supplied by non-party J.A.K.'s Puppies, Inc.

*See id.* ¶ 38. In light of the FAC, the Court denied the two motions to dismiss and the motion to strike class action allegations as moot. ECF No. 28.

On November 28, 2022, the Mohrfeld Defendants filed the instant motion to dismiss the FAC (hereinafter, the "Mohrfeld MTD") and a motion to strike class action allegations (the "Motion to Strike"). ECF Nos. 32–33. The Salinas Defendants separately moved to dismiss the FAC the same day (hereinafter, the "Salinas MTD"), requesting that the Court dismiss Plaintiffs' civil RICO claim with prejudice and remand the remaining claims to state court. ECF No. 34-1 at 2. The Salinas Defendants simultaneously filed a notice that they joined in Mohrfeld Defendants' two motions. ECF Nos. 35–36. These motions have been fully briefed. *See* ECF Nos. 40–42, 44.

On December 12, 2022, the TBHF Defendants joined in the Mohrfeld and Salinas Defendants' pending motions. ECF Nos. 37–39. Plaintiffs opposed the TBHF Defendants' joinder to the Mohrfeld Defendants' motion to dismiss. ECF No. 46. The TBHF Defendants filed a reply to Plaintiffs' opposition in addition to two other replies, which

noted that Plaintiffs did not oppose their other joinders and incorporating the arguments raised by the Mohrfeld and Salinas Defendants in their reply papers. *See* ECF Nos. 47–49. The Court refers to the Mohrfeld, Salinas, and TBHF Defendants collectively as the "Moving Parties."

### B.   Plaintiffs' Allegations[2]

Plaintiffs allege that each of them purchased a puppy in California that was labeled as a "rescue" from Defendant Pet Connect after the Pet Store Law went into effect on January 1, 2019. *See* FAC ¶¶ 2, 16–21, 69. Taft, a Nevada resident, purchased a puppy from Broadway Puppies in San Diego County on May 15, 2019. *Id.* ¶ 16. Ceron, a California resident, also purchased a puppy from Broadway Puppies on February 7, 2020. *Id.* ¶ 19. Gonzalez, a California resident, purchased a puppy from Pups & Pets in San Diego County on February 23, 2020. *Id.* ¶ 17. Henry, a Virginia resident, purchased a puppy from National City Puppy in San Diego County on August 25, 2019. *Id.* ¶ 18. Johnson, a Texas resident, also purchased a puppy from National City Puppy on November 13, 2019. *Id.* ¶ 21. Zapata, a California resident, purchased a puppy from Fancy Puppy in Riverside County on December 3, 2019. *Id.* ¶ 20.

According to Plaintiffs, these puppies were not "rescues" but purchased from "puppy mills," which are "large commercial breeding facilities that mass produce animals for sale at retail markets." *Id.* ¶¶ 5, 8–9, 60. Plaintiffs allege that they incurred thousands of dollars in veterinary bills due to illnesses caused by the poor conditions in which the puppies were bred, transported, and stored prior to the sale. *Id.* ¶ 88. Indeed, many of Plaintiffs' puppies had severe health problems requiring expensive and ongoing veterinary care, or in some cases, euthanasia. *Id.* ¶ 60. Plaintiffs allege that they would not have purchased these puppies had it not been for the misrepresentation. *See id.* ¶ 86.

---

[2]   For the Court's analysis of the pending motions to dismiss, Plaintiffs' factual allegations are accepted "as true." *See Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1050 (9th Cir. 2019) (citing *Karam v. City of Burbank*, 352 F.3d 1188, 1192 (9th Cir. 2003)).

Plaintiffs allege that Defendants began an "unlawful and fraudulent scheme" in mid-2018 to mislabel puppies that were being sold at California pet stores, in anticipation of the Pet Store Law going into effect. *See id.* ¶¶ 8–10. To that end, the Salinas Defendants allegedly created Pet Connect to "act as the source of the puppies." *Id.* ¶ 50. Plaintiffs allege that David and Veronica Salinas conspired with Ray Rothman to create sham cooperative agreements with animal shelters to claim that Pet Connect was a valid rescue group.[3] *Id.* ¶ 53. On a weekly basis, Ray Rothman allegedly emailed breed availability notices to California pet stores from Select, an entity owned by Mohrfeld and managed by Ray Rothman. *Id.* ¶¶ 51–52, 58. The pet stores would then indicate which puppies they wished to purchase for that week's shipment. *Id.* ¶ 52.

Plaintiffs allege that Defendants would list a "series of sham transactions between Defendants' various shell companies and pass-through entities." *Id.* ¶ 52. Plaintiffs allege that the TBHF Defendants and Kurz "operated as a hub for tracking and altering ownership information of puppies so they [could] be purchased from breeders and shipped to pet stores while obscuring the true source of the puppies." *Id.* ¶ 48. Plaintiffs also allege that Jeanne's Gems, Steffensmeier, Kurz, and Tiffanies, LLC ("Tiffanies")[4] were brokers that knowingly purchased puppies from breeders and sold them to Select by paying RAK Transport, a for-profit entity owned by Ray and Alysia Rothman. *Id.* ¶ 56. According to Plaintiffs, Ray and Alysia Rothman "funneled money" through RAK Transport to make it appear that Pet Connect was not receiving compensation for the puppies. *Id.* ¶ 57. Neither RAK Transport nor Pet Connect ever had a physical location. *Id.*

Plaintiffs allege that Ray Rothman, Alysia Rothman, Pet Connect, Jeanne's Gems, Steffensmeier, Select, Mohrfeld, RAK Transport, Tiffanies, Kurz, and TBHF Defendants

---

[3]    Plaintiffs also allege that the shelters "quickly became aware of the scam and cancelled the agreements," causing Defendants to claim that they paid a shelter in Mexico for a cooperative agreement. FAC ¶ 53.

[4]    The FAC alleges that Kurz owns and operates Tiffanies. FAC ¶ 49. Both defendants have yet to appear in this action.

would ship "truckloads of puppies every week to California pet stores fraudulently mislabeled as 'rescues.'" *Id.* ¶ 83. Then David Salinas, Veronica Salinas, and Red Rock allegedly received the puppies in California and "passed them off to pet stores as 'rescues.'" *Id.* ¶ 84. According to Plaintiffs, Defendants defrauded approximately 6,000 consumers over a two-year period spanning mid-2018 to mid-2020. *Id.* ¶¶ 1, 10.

## II.   Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive a 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). The Court "disregard[s] '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). "After eliminating such unsupported legal conclusions, we identify 'well-pleaded factual allegations,' which we assume to be true, 'and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Generally, a complaint "need only satisfy the [Federal Rule of Civil Procedure] 8(a) notice pleading standard . . . to survive a Rule 12(b)(6) dismissal." *Sherman v. Stryker Corp.*, No. SACV 09-224JVS(ANX), 2009 WL 2241664, at *1 (C.D. Cal. Mar. 30, 2009) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1062 (9th Cir. 2004)). Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and applies to all civil claims except those containing averments of "fraud or mistake," which must be pleaded with particularity under Federal Rule of Civil Procedure 9(b). *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1102–03 (9th Cir. 2008) (citing Fed. R. Civ. P. 8, 9).

"Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citing *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir.2001)) (internal quotation marks omitted). The particularity requirement of Rule 9(b) applies to both federal state-law causes of action. *See id.* at 1125. Further, this heightened pleading standard may apply even "where fraud is not a necessary element of a claim." *Id.* As the Ninth Circuit explained:

> In cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct. In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b).

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003). "When an entire complaint, or an entire claim within a complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim." *Vess*, 317 F.3d at 1107.[5]

//

//

//

//

//

//

---

[5]    "In other cases, however, a plaintiff may choose not to allege a unified course of fraudulent conduct in support of a claim, but rather to allege some fraudulent and some non-fraudulent conduct. In such cases, only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements." *Vess*, 317 F.3d at 1104.

## III.   Analysis

### A.   Pleading Standard

As a preliminary matter, the Court addresses whether the standard under Rule 8(a) or Rule 9(b) applies to Plaintiffs' claims. The Parties appear to agree that Plaintiffs must plead their facts with particularity, as required under Rule 9(b). However, the Parties disagree that Plaintiffs have satisfied this heightened pleading requirement. *See* ECF No. 32-1 at 6; ECF No. 40 at 14–16; ECF No. 46 at 5.

The Court concludes that Rule 9(b) is the appropriate standard because Plaintiffs' claims are "grounded in fraud." [6] *See Vess*, 317 F.3d at 1103. The Ninth Circuit and district courts in this circuit have found that civil RICO, CLRA, UCL, and even negligence claims may be "grounded in fraud" so that Rule 9(b) applies. *See, e.g.*, *Kearns*, 567 F.3d at 1125

---

[6]   Plaintiffs' second claim alleges a violation of the UCL, which prohibits business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. *See* Cal. Bus. & Prof. Code § 17200, *et seq.* "Each of these three prongs constitutes a separate and independent cause of action." *Vasic v. PatentHealth, L.L.C.*, 171 F. Supp. 3d 1034, 1042 (S.D. Cal. 2016) (citing *Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163 (1999)). Plaintiffs' UCL claim is based on the unlawful and fraudulent prongs. *See* FAC ¶¶ 71–79. The alleged misconduct underlying both prongs is Defendants' "unlawful scheme to sell puppy mill puppies in a pet store and falsely advertise to the public that the puppies are 'rescues' from a shelter or other legitimate rescue operation." *See id.* ¶ 76. This is the same "unified course of fraudulent conduct" that forms the basis of all Plaintiffs' claims, and is thus considered "grounded in fraud." *See Vess*, 317 F.3d at 1103–04.

Nevertheless, to the extent that the unlawful prong of Plaintiffs' UCL claim may be based on any non-fraudulent conduct—i.e., solely on Defendants' alleged violation of the Pet Store Law—the Court concludes that Plaintiffs fail to state claim. *See Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 858 (N.D. Cal. 2012) ("The unlawful prong of the UCL 'borrows violations of other laws and treats them as unlawful practices,' which the UCL then 'makes independently actionable.'") (quoting *Cel–Tech Commc'ns*, 20 Cal. 4th at 180). The Pet Store Law restricts the sale of non-rescue dogs by "pet store operators," which is further defined as an individual or legal entity that "owns or operates a pet store, or both." Cal. Health & Safety Code § 122350(j). Although Plaintiffs allege that "all Defendants were knowingly and willfully acting as accomplices to all other Defendants," they never allege that any Defendants are "pet store operators." *See* FAC ¶ 75.

(applying Rule 9(b) to plaintiff's CLRA and UCL claim); *Edwards*, 356 F.3d at 1066 (holding that Rule 9(b) "applies to civil RICO fraud claims"); *Aquilina v. Certain Underwriters at Lloyd's*, 407 F. Supp. 3d 978, 994 (D. Haw. 2019) ("While it might seem counterintuitive to apply Rule 9(b) to a claim for negligence, Ninth Circuit case law is clear that allegations of a 'unified course of fraudulent conduct' may subject claims—even those that ordinarily would not require a showing of fraud—to the heightened pleading standard.").

Here, the FAC alleges "a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of [Plaintiffs'] claim[s]." *See Vess*, 317 F.3d at 1103–04; *see also Kearns*, 567 F.3d at 1127 (holding that the entire complaint must be pleaded with particularity where plaintiff alleges "a unified fraudulent course of conduct"). Namely, Plaintiffs allege that Defendants participated in a "scheme" to profit from defrauding consumers like Plaintiffs about the source of Defendants' puppies. *See* FAC ¶¶ 7–9, 55–59, 61, 66, 74–76, 84–89, 91–92, 105–10. To that end, Defendants knowingly purchased puppies from breeders/puppy mills to be sold as "rescues" at California pet stores and obscured the source of those payments through "a series of shell companies and sham transactions." *See id.* ¶¶ 55–59, 61. *See also Dyson, Inc. v. Garry Vacuum, LLC*, No. CV1001626MMMVBKX, 2010 WL 11595882, at *4 (C.D. Cal. July 19, 2010) ("Where claims are based on a course of conduct involving knowingly fraudulent misrepresentations, however, they are said to 'sound in fraud' and are subject to the requirements of Rule 9(b)."). The Court therefore turns to whether the FAC satisfies the heightened pleading standard of Rule 9(b).

## B.    Application of the Rule 9(b) Standard

"To avoid dismissal for inadequacy under Rule 9(b), a complaint must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Dyson*, 2010 WL 11595882, at *6 (internal quotation marks and alterations omitted) (citing *Edwards*, 356 F.3d at 1066). In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct

charged." *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

Here, the FAC fails to allege the particular circumstances surrounding Defendants' representation that the puppies Plaintiffs purchased where "rescues." Although Plaintiffs allege that Defendants "falsely and fraudulently labeled puppies" as "rescues," or aided and abetted such efforts, it is unclear how Defendants labeled the puppies and what specifically was stated on those labels.[7] *See id.* ¶¶ 65–66; *see also Chang v. Interactive Brokers LLC*, No. 21-CV-05967-NC, 2021 WL 5507169, at *3 (N.D. Cal. Nov. 24, 2021) ("[B]ecause the aiding and abetting claims alleged in the complaint are both grounded in the fraudulent scheme, the Rule 9(b) heightened pleading standard applies."). For example, there is no indication whether the puppies were physically marked or placed in labeled cages; whether they were accompanied by sales materials; or whether certain pet store representatives verbally referred to the puppies as "rescues." It is also unclear when or how each Defendant was involved in the alleged mislabeling.

At other parts of the FAC, Plaintiffs allege that Defendants made "advertisements and representations." *See* FAC ¶¶ 67, 69; *see also id.* ¶¶ 8, 69, 75 (referring to allegedly false or misleading advertising). But nowhere in the FAC do Plaintiffs specify the contents of these advertisements or representations and who made them. Further, the FAC only includes the dates on which Plaintiffs purchased their puppies, not when Plaintiffs were exposed to and influenced by the alleged misrepresentations. *See* FAC ¶¶ 16–21. The lack of such factual allegations is significant, especially given that Plaintiffs purchased their puppies from pet stores and not directly from Defendants.[8]

---

[7]    In other parts of the FAC, Plaintiffs allege that the puppies they purchased were "labeled as being from Defendant PET CONNECT RESCUE, Inc." FAC ¶¶ 16–21.

[8]    The pet stores listed in the FAC are not defendants to this action. Nor do Plaintiffs do allege that any of the Defendants owned or operated these pet stores and/or others in California.

In short, the FAC contains general allegations about Defendants' interactions with one another in carrying out the fraudulent "scheme" but the "who, what, when, where and how" remain unclear. *See Mostowfi v. i2 Telecom Int'l, Inc.*, 269 F. App'x 621, 624 (9th Cir. 2008) (affirming district court's dismissal of a complaint under Rule 9(b) where the alleged predicate acts of plaintiffs' RICO claim were not pleaded with particuarlity). In fact, many of Plaintiffs' allegations "lump together the defendants without identifying the particular acts or omissions that each defendant committed." *See id*. *See, e.g.*, FAC ¶¶ 52–55, 59–61, 67.

As currently pleaded, the FAC does not give Defendants "the opportunity to respond to the alleged misconduct." *See Kearns*, 567 F.3d at 1126. The Court therefore grants the Moving Parties' motions to dismiss based solely on Plaintiff's failure to satisfy Rule 9(b) and dismisses the FAC.

### C.   Leave to Amend

If the court dismisses a complaint, it must then determine whether to grant leave to amend. *See Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995). "A district court may deny a plaintiff leave to amend if it determines that allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency, or if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies." *Telesaurus*, 623 F.3d at 1003 (internal quotation marks and citations omitted).

Here, the Court cannot conclude that any amendment would be futile. Plaintiffs may be able to allege other facts that cure the deficiencies identified above. *See id.* The Court therefore grants Plaintiffs leave to amend their complaint within thirty (30) days of this Order.

## IV.   CONCLUSION

For the reasons above, the Court **GRANTS** Moving Defendants' motions to dismiss (ECF Nos. 32, 34) based solely on Plaintiffs' failure to satisfy Rule 9(b) and dismisses the FAC with leave to amend. If Plaintiffs choose to file an amended complaint, they must do so within thirty (30) days of this Order and effect service in accordance with Federal Rule

of Civil Procedure 4 as to any newly named defendants or defendants who have yet not appeared in this action.

Further, the Court **DENIES** the Mohrfeld Defendants' motion to strike class allegations (ECF No. 33) as moot.

**IT IS SO ORDERED**.

Dated:  August 11, 2023

Hon. Robert S. Huie
United States District Judge

22-cv-697-RSH-DEB